Vivek Shah
1301 N. Broadway, Ste. 32167
Los Angeles, CA 90012
Telephone: (224) 246-2874
Email: newvivekshah@gmail.com



**FILED**

CLERK, U.S. DISTRICT COURT

6/13/2026

CENTRAL DISTRICT OF CALIFORNIA

BY _____AG_____ DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

FEE PAID

| | |
|---|---|
| VIVEK SHAH,<br><br>   Plaintiff,<br><br> v.<br><br>UDEMY, INC.,<br><br>   Defendant. | Case No. _____2:26-cv-06527-PA-RAO<br><br>**COMPLAINT FOR:**<br><br>**(1) VIOLATIONS OF THE FEDERAL WIRETAP ACT, 18 U.S.C. §§ 2511 & 2520; AND**<br><br>**(2) VIOLATIONS OF CAL. PENAL CODE § 631(a) (TWENTY SEPARATE VIOLATIONS)**<br><br>**DEMAND FOR JURY TRIAL** |

### INTRODUCTION

1. This is a civil action under the federal Wiretap Act, 18 U.S.C. §§ 2511 and 2520, and the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631(a). It arises from Defendant Udemy, Inc.'s real-time interception — and aiding, agreeing with, employing, and procuring of third parties' real-time interception — of the contents of Plaintiff's electronic communications while Plaintiff used the on-site search function of Defendant's website, https://www.udemy.com (the "Website").

2. Defendant deliberately embedded, configured, and maintained third-party advertising and analytics code on the Website — including tags operated by Google LLC ("Google"), X Corp. ("Twitter"), and Microsoft Corporation ("Microsoft") (collectively, the "Tracking Companies") — that operates as a hidden, automated wiretap on the Website's search bar.

3.    When Plaintiff typed a search query into the Website's search bar, Defendant's embedded third-party code caused the exact, verbatim contents of that query to be transmitted contemporaneously, in real time, from Plaintiff's browser to servers operated by the Tracking Companies, embedded in the parameters of outbound network requests, while the communication was in transit and was being sent and received within the State of California.

4.    On September 9, 2025, with browser developer tools open beside the Website, Plaintiff submitted a search query and observed, in real time, his verbatim search terms being transmitted in the same instant to Google, Twitter, and Microsoft's Bing advertising service, in each case as part of the same page-load sequence and linked to identifiers the Tracking Companies use to tie web activity to a specific individual.

5.    These interceptions occurred without Plaintiff's prior consent. At the time of Plaintiff's communications, the Website presented no cookie banner, no notice, and no mechanism through which Plaintiff could accept or refuse third-party tracking. The Ninth Circuit has held that disclosure or consent obtained only after interception has begun is no consent at all.

6.    Section 631(a) imposes liability on anyone who willfully and without the consent of all parties reads, attempts to read, or learns the contents of a communication while in transit, and — in its fourth clause — on anyone who "aids, agrees with, employs, or conspires with" another to do so. The federal Wiretap Act likewise imposes liability on anyone who intentionally intercepts, or intentionally procures another to intercept, the contents of an electronic communication. The Tracking Companies intercepted the contents of Plaintiff's communications; Defendant aided, agreed with, employed, and procured them to do so.

7.    Plaintiff seeks statutory damages, actual damages, and punitive damages as authorized by 18 U.S.C. § 2520 and Cal. Penal Code § 637.2. Plaintiff does not seek injunctive relief.

**JURISDICTION AND VENUE**

8.   This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's First Cause of Action arises under the laws of the United States — the federal Wiretap Act, 18 U.S.C. §§ 2511 and 2520.

9.   This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiff's CIPA claim, which arises from the same case or controversy — the same interceptions of the same communications — as Plaintiff's federal claim.

10.   This Court has general personal jurisdiction over Defendant. Defendant is incorporated in Delaware and maintains its principal place of business in San Francisco, California. Defendant is therefore at home in California and subject to the general personal jurisdiction of the courts of this State.

11.   This Court additionally has specific personal jurisdiction over Defendant. Under *Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025) (en banc), an interactive platform expressly aims its wrongful conduct at California when its forum contacts are its own deliberate choice. Defendant operates the Website as an interactive commercial platform serving California residents, deliberately embedded the Tracking Companies' code to collect and monetize visitor data including that of its California users, and Plaintiff's claims arise from that California-directed conduct.

12.   Venue is proper in this District under 28 U.S.C. § 1391(b)(2). A substantial part of the events giving rise to the claims occurred in this District: Plaintiff was located in Los Angeles County when each interception occurred, the intercepted communications originated here, and the injury was suffered here.

## PARTIES

13.   Plaintiff Vivek Shah is, and at all relevant times was, a natural person and citizen of California residing in Los Angeles County.

14.   Defendant Udemy, Inc. is a corporation incorporated under the laws of Delaware with its principal place of business in San Francisco, California. Defendant owns and operates the Website and, at all relevant times, exercised exclusive control over the Website's source

code, including the decision to embed, configure, and maintain the third-party tracking code described herein.

15.     Whenever this Complaint refers to acts of Defendant, those acts were authorized, directed, or ratified by Defendant's officers, managing agents, or employees acting within the scope of their authority.

## FACTUAL ALLEGATIONS

### A.  The Website's Search Function and Plaintiff's Search Communications

16.     The Website includes a search bar inviting visitors to type free-form text queries to locate courses and content. A search query is a communication from the visitor to Defendant: the visitor composes a message — the search terms — and transmits it by wire to Defendant's server, which responds with results. When a visitor submits a query, the Website navigates to a results page whose URL embeds the visitor's verbatim search terms as a query-string parameter, in the form https://www.udemy.com/courses/search/?src=ukw&q=[SEARCH TERMS]. Defendant designed and controls this URL structure.

17.     During the limitations period, on no fewer than twenty separate occasions within the one-year period preceding the filing of this Complaint, Plaintiff accessed the Website from his computer while located in Los Angeles County, California, and submitted distinct search queries through the Website's search bar, each composed of unique search terms.

18.     On September 9, 2025, Plaintiff submitted a search query through the Website's search bar while running browser developer tools, and contemporaneously inspected the resulting network activity, documenting the interceptions described in Paragraphs 20 through 23 below. Each of Plaintiff's queries during the limitations period consisted of unique terms Plaintiff composed and conveyed to Defendant alone, and disclosed information about Plaintiff's interests and activity that Plaintiff reasonably regarded as private. Plaintiff reasonably expected that the words he typed into Defendant's search bar were a private exchange between himself and Defendant — not a communication being silently duplicated, in real time, to three of the largest commercial data-collection enterprises on the internet.

### B.  The Interception Architecture

19. Unknown to Plaintiff at the time of his communications, Defendant had embedded in the Website's code tracking and analytics scripts supplied by Google, Twitter, and Microsoft, each selected and configured by Defendant to execute automatically in every visitor's browser on page load — including search-results pages whose URLs Defendant designed to embed visitors' verbatim search terms.

20. **Google.** When Plaintiff submitted his search, a GET request fired from Plaintiff's browser to https://www.google.com/pagead/1p-user-list/877556973/, under Defendant's Google conversion identifier 877556973, transmitting to Google a url parameter containing the complete results-page URL — *including Plaintiff's verbatim search terms* — together with the page title and a persistent advertising identifier that Google uses to add the visitor to remarketing and Customer Match audiences. Google's server returned HTTP 200.

21. **X Corp. (Twitter).** In the same sequence, a GET request fired from Plaintiff's browser to https://analytics.twitter.com/i/adsct, transmitting to X Corp. a parameter containing the complete results-page URL *including Plaintiff's verbatim search terms*, together with advertiser and conversion-tracking identifiers. The server returned HTTP 200.

22. **Microsoft (Bing).** In the same sequence, a GET request fired from Plaintiff's browser to https://bat.bing.com/action/0, under Defendant's Bing Universal Event Tracking tag identifier 259114040, transmitting to Microsoft a parameter set containing the complete results-page URL and page title *including Plaintiff's verbatim search terms*, together with persistent machine and visitor identifiers. The request was received by Microsoft's Bing servers.

23. Plaintiff documented these transmissions by inspecting the Website's network activity at the time of his search. When Plaintiff filtered the page's outbound network traffic for his own search term, the filter matched numerous additional requests carrying that term to third-party endpoints, indicating that Plaintiff's verbatim search term left his browser repeatedly on a single search. The twenty violations alleged below conservatively count only the documented recipients. The same architecture, operating automatically, uniformly, and indiscriminately, intercepted each of Plaintiff's other search queries during the limitations period in the identical manner.

**C. The Interceptions Occurred in Real Time, While the Communications Were in Transit**

24. Each transmission occurred contemporaneously with Plaintiff's communication to Defendant, as part of the same page-load sequence triggered by Plaintiff's submission of his query. As Plaintiff watched in his browser's developer tools, the moment he submitted his query the tracker requests carrying his search terms fired to the Tracking Companies' servers. This was not retrieval from storage after the fact; the contents were acquired during transmission, before the communication exchange between Plaintiff and Defendant was complete. *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814 (E.D. Cal. 2025).

25. The simultaneous, unauthorized duplication and forwarding of an unknowing user's communications to third parties is precisely the conduct the Ninth Circuit has condemned. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020).

**D. No Prior Consent**

26. Section 631(a) and the federal Wiretap Act require consent given *before* the interception. Consent obtained after interception has begun is no consent at all. *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107 (9th Cir. May 31, 2022).

27. Defendant obtained no consent from Plaintiff, prior or otherwise. At the time of Plaintiff's communications, the Website displayed no cookie banner and presented no notice or mechanism — express or implied — through which Plaintiff could have learned of or refused the transmission of his search communications to third parties. Plaintiff did not assent to any privacy policy or terms of use before the interceptions occurred.

28. To the extent Defendant points to any later-implemented disclosure, banner, or policy, any such measure was adopted only after the interceptions of which Plaintiff complains and is, as to those interceptions, legally insufficient retroactive consent. *Javier*, *supra*; *In re TikTok, Inc. In-App Browser Priv. Litig.*, No. 24 C 2110, 2024 WL 4367849, at 9 (N.D. Ill. Oct. 1, 2024). Plaintiff's later review of the Website's terms — undertaken only after he discovered the interceptions, to identify the proper party against whom to seek relief — cannot retroactively supply consent to interceptions that had already occurred.

**E. The Tracking Companies Are Third-Party Eavesdroppers Acting for Their Own Purposes**

29.     None of the Tracking Companies is a party to the communications between Plaintiff and Defendant. Each is a separate enterprise that acquired the contents of Plaintiff's communications for its own commercial exploitation — not a passive recording instrument used solely for Defendant's benefit.

30.     Google incorporated the data into ad selection, conversion measurement, and remarketing and Customer Match audiences keyed to its own identifiers; X Corp. incorporated the data into its advertising and conversion-tracking systems keyed to its own identifiers; and Microsoft incorporated the data into Bing's advertising and analytics systems keyed to its own machine and visitor identifiers. Each thereby linked Plaintiff's verbatim search content to persistent, identity-linked advertising identifiers.

31.     Each Tracking Company accordingly possessed both the capability and the practice of using the intercepted contents for its own purposes, independent of any service to Defendant — the dispositive consideration distinguishing a third-party eavesdropper from a mere recording tool.

**F.  Defendant Aided, Agreed With, Employed, and Procured the Tracking Companies**

32.     The interceptions occurred because Defendant made them occur. Defendant registered its own accounts and identifiers with the Tracking Companies (including Google conversion identifier 877556973 and Bing tag identifier 259114040); inserted each vendor's JavaScript into the Website's source code; configured the tags to execute on every page, including search-results pages whose URLs Defendant designed to embed visitors' verbatim search terms; and maintained that architecture throughout the relevant period.

33.     Defendant aided and conspired with the Tracking Companies to intercept Plaintiff's search communications because it (i) added the search bar to the Website, (ii) concealed the attribution of the embedded third-party tags, and (iii) did not notify Plaintiff that his search terms would be sent to the Tracking Companies.

34.     Defendant knew what the code does and profited from the arrangement through advertising, audience-building, retargeting, and conversion measurement. By intentionally embedding, configuring, maintaining, and profiting from the interception architecture,

Defendant aided, agreed with, employed, conspired with, and procured each Tracking Company to read and learn the contents of Plaintiff's communications while in transit.

## G. Plaintiff's Injuries

35.  Plaintiff has suffered a concrete, particularized, and actual injury in fact, fairly traceable to Defendant's conduct and redressable by this Court.

36.  The interception of the *contents* of Plaintiff's communications — the verbatim search terms he composed and transmitted — is a concrete invasion of an interest long protected at common law: the privacy of one's communications against secret acquisition by uninvited third parties. This harm bears a close relationship to the harms redressed by the common-law actions for intrusion upon seclusion and for the unauthorized interception of private communications.

37.  Plaintiff's injury is not a bare statutory violation and is not the mere collection of device, browser, or other generic metadata. Plaintiff pleads the acquisition of the *contents* of his communications — the substance of the messages he composed — and their linkage, at the moment of interception, to persistent identifiers that the Tracking Companies use to tie web activity to a specific person's advertising identity. This is precisely the acquisition of private, identity-linked information whose absence defeats standing in the metadata cases.

38.  Plaintiff suffered the disclosure of identity-revealing message content to commercial surveillance enterprises; the linkage of that content to his identity through the Tracking Companies' own identifiers; the loss of control over his personal information and the diminution of its value, for which an established commercial market exists; and distress and a chilling of his willingness to communicate freely with websites.

### FIRST CAUSE OF ACTION
### Violations of the Federal Wiretap Act, 18 U.S.C. §§ 2511 & 2520

39.  Plaintiff realleges and incorporates the preceding paragraphs.

40.  Plaintiff's search queries were "electronic communications" within 18 U.S.C. § 2510(12).

41.  The verbatim search terms Plaintiff transmitted are the "contents" of those communications within 18 U.S.C. § 2510(8) — "the substance, purport, or meaning" of the communication,

not record information. *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014); *In re Facebook Tracking*, 956 F.3d at 605; *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024).

42. Each Tracking Company intentionally intercepted the contents of Plaintiff's communications — by means of a device, namely its tracking code executing in Plaintiff's browser together with its receiving servers — while those communications were in transit, in violation of 18 U.S.C. § 2511(1)(a).

43. Defendant intentionally procured, aided, and caused the Tracking Companies to intercept the contents of Plaintiff's communications, in violation of 18 U.S.C. § 2511(1).

44. The interceptions are not protected by 18 U.S.C. § 2511(2)(d). The Tracking Companies were not parties to Plaintiff's communications. And to the extent Defendant asserts it was a party and consented, the communications were intercepted for the purpose of committing a tortious act — the invasion of Plaintiff's privacy and the unauthorized commercial exploitation of the contents of his communications — separate and apart from the act of interception itself.

45. Plaintiff did not consent to the interceptions.

46. Pursuant to 18 U.S.C. § 2520, Plaintiff is entitled to recover the greater of actual damages or statutory damages of the greater of $100 per day of violation or $10,000, and punitive damages, together with costs of suit.

## SECOND CAUSE OF ACTION
### Violations of Cal. Penal Code § 631(a) — Twenty Separate Violations

47. Plaintiff realleges and incorporates the preceding paragraphs.

48. Plaintiff's search queries were "communications" within § 631(a): messages composed by Plaintiff and transmitted by wire from his browser in California to Defendant's servers.

49. The verbatim search terms — transmitted to the Tracking Companies — are the "contents" of those communications, not record information. *In re Zynga*, 750 F.3d at 1106; *In re Facebook Tracking*, 956 F.3d at 605; *R.C. v. Walgreen*, 733 F. Supp. 3d at 902.

50.     Each Tracking Company, by means of a machine, instrument, or contrivance, willfully read, attempted to read, and learned the contents of Plaintiff's communications while in transit, without the consent of all parties, in violation of the second clause of § 631(a).

51.     Defendant willfully aided, agreed with, employed, and conspired with each Tracking Company to commit those acts, in violation of the fourth clause of § 631(a).

52.     The conduct was willful, and Plaintiff did not consent; any disclosure was at most retroactive and legally insufficient.

53.     Each acquisition of the contents of each of Plaintiff's search communications by each Tracking Company was a separate, discrete violation. *Bliss v. CoreCivic, Inc.*, 978 F.3d 1144 (9th Cir. 2020); *Brown v. Google LLC*, 525 F. Supp. 3d 1049 (N.D. Cal. 2021).

54.     All violations occurred within one year of the filing of this Complaint and are timely. Cal. Civ. Proc. Code § 340(a).

55.     Plaintiff submitted no fewer than twenty distinct search queries through the Website's search bar during the limitations period, each acquired by the documented third-party recipients through the same automatic interception architecture, which operated uniformly and indiscriminately on every search, yielding no fewer than twenty separate, separately actionable violations.

56.     Pursuant to Cal. Penal Code § 637.2(a)(1) and (c), Plaintiff is entitled to statutory damages of $5,000 per violation — not less than $100,000 in total — without proof of actual damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendant as follows:

A.      Statutory damages of $5,000 for each of no fewer than twenty violations of Cal. Penal Code § 631(a), totaling not less than $100,000, pursuant to Cal. Penal Code § 637.2;

B.      Statutory or actual damages, and punitive damages, pursuant to 18 U.S.C. § 2520;

C.      Pre-judgment and post-judgment interest, and costs of suit; and

D.      Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 13, 2026

Respectfully submitted,

/s/ Vivek Shah
Vivek Shah